**BLUMENTHAL, NORDREHAUG & BHOWMIK**
  Norman B. Blumenthal (State Bar #068687)
  Kyle R. Nordrehaug (State Bar #205975)
  Aparajit Bhowmik (State Bar #248066)
  Piya Mukherjee (State Bar #274217)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232
Firm Website: http://www.bamlawca.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIEL J. FULCHER, an individual, on behalf of himself and all persons similarly situated, | Case No. **CV 11-1821 EDL** |
| Plaintiff, | **NOTICE OF JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |
| vs. | |
| OLAN MILLS, INC.; and Does 1 through 50, | Hearing Date: December 20, 2011<br>Hearing Time: 9:30 a.m. |
| Defendant. | |
| | Mag. Judge: Elizabeth D. Laporte |
| | Action Filed: February 22, 2011 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 20, 2011 at 9:30 a.m. before the Honorable Elizabeth D. Laporte in Courtroom E of the San Francisco Courthouse of the United States District Court for the Northern District of California, Plaintiff Ariel Fulcher and Defendant Olan Mills, Inc. will jointly move and hereby do jointly move for Preliminary Approval of the proposed Class Settlement in this case. This motion is unopposed as based on the Class Action Settlement Agreement.

The motion will be based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Kyle Nordrehaug and attached exhibits, the argument of counsel and upon such other material contained in the file and pleadings of this action.

Dated: November 14, 2011

**BLUMENTHAL, NORDREHAUG & BHOWMIK**

By:  */s/ Kyle R. Nordrehaug*
　　　Kyle R. Nordrehaug
　　　Attorneys for Plaintiffs


Dated: November 14, 2011

**LITTLER MENDELSON**


By:　　*/s/ Jennifer B. Robinson*
　　　Jennifer B. Robinson
　　　Attorneys for Defendant

# TABLE OF CONTENTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   DESCRIPTION OF THE PROPOSED SETTLEMENT . . . . . . . . . . . . . . . . . . . . . 1

III.  NATURE OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   PLAN OF ALLOCATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.    THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR
      PRELIMINARY APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    The Role Of The Court In Preliminary Approval
            Of A Class Action Settlement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    Factors To Be Considered In Granting Preliminarily Approval  . . . . . . . . . . 10

            1.    The Settlement is the Product of Serious, Informed and
                  Noncollusive Negotiations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            2.    The Settlement Has No "Obvious Deficiencies" and Falls Within
                  the Range for Approval  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            3.    The Settlement Does Not Improperly Grant Preferential Treatment
                  To Class Representatives or Segments Of The Class . . . . . . . . . . . . . 14

            4.    The Stage Of The Proceedings Are Sufficiently Advanced To
                  Permit Preliminary Approval Of These Settlements  . . . . . . . . . . . . . 15

VI.   THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES  . . . 16

      A.    Rule 23 of the Federal Rules of Civil Procedure Governs  . . . . . . . . . . . . . 16

      B.    The Numerosity Requirement Is Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      C.    Common Questions of Law Bind the Class . . . . . . . . . . . . . . . . . . . . . . . . . 17

      D.    The Claim of the Representative Plaintiff Is Typical of the Class Claims  . . 18

      E.    The Class Representative Has Fairly and Adequately Protected
            the Interest of the Class  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      F.    For the Class As Alleged in the Second Amended Complaint, The
            Additional Requirements of Rule 23 Are Satisfied . . . . . . . . . . . . . . . . . . . 20

VII.  THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE  . . . . . . . . 22

VIII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

**Cases**:

Ansari v. New York Univ.,
179 F.R.D. 112 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Armstrong v. Board of School Directors,
616 F.2d 305 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Buchholtz v. Swift & Co.,
62 F.R.D. 581 (D.Minn. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Consolidated Rail Corp. v. Town of Hyde Park,
47 F.3d 473 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Detroit v. Grinnell Corp.,
495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Donaldson v. Pillsbury Co.,
554 F.2d 825 (8th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

EEOC v. Kovacevich "5" Farms,
2007 U.S. Dist. LEXIS 32330 (E.D.Cal. April 18, 2007) . . . . . . . . . . . . . . . . . . . 17

Fisher Bros. v. Cambridge-Lee Indus., Inc.,
630 F. Supp. 482 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Gautreaux v. Pierce,
690 F.2d 616 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Glass v. UBS Fin. Servs.,
2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007) . . . . . . . . . . . . . . . 14-16

Hanlon v. Chrysler Co.,
150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18, 19

Heffelfinger v. Elec. Data Sys. Corp.,
2008 U.S. Dist. LEXIS 46461 (C.D. Cal. June 6, 2008) . . . . . . . . . . . . . . . . . . . 21

Hopson v. Hanesbrands Inc.,
2009 U.S. Dist. LEXIS 33900 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,
55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Jiffy Lube Sec. Litig.,
927 F.2d 155 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Wash. Public Power Supply System Sec. Litig.,
720 F. Supp. 1379 (D. Ariz. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Wirebound Boxes Antitrust Lit.,
128 F.R.D. 268 (D. Minn. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

In re Workers' Compensation,
    130 F.R.D. 99 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

Jacobs v. Cal. State Auto. Ass'n Inter-Ins.,
    2009 U.S. Dist. LEXIS 101586 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Jenkins v. Raymark Ind., Inc.,
    782 F.2d 468 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Jenson v. Continental Fin. Corp.,
    404 F. Supp. 806 (D. Minn. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Jordan v. County of Los Angeles,
    669 F.2d 1311 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Kirkorian v. Borelli,
    695 F. Supp. 446 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Lockwood Motors, Inc. v. General Motors Corp.,
    162 F.R.D. 569 (D. Minn. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 20

Lyons v. Marrud, Inc.,
    [1972-1973 Transfer Binder] Fed. Sec. L. Rep.
    (CCH) Paragraph 93,525 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Officers for Justice v. Civil Serv. Comm'n,
    688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,
    323 F. Supp. 364 (E.D. Pa. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,
    390 U.S. 414 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Reed v. General Motors Corp.,
    703 F.2d 170 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Slaven v. BP Am., Inc.,
    190 F.R.D. 649 (C.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Smith v. Ceva Logistics U.S., Inc.,
    2011 U.S. Dist. LEXIS 82020 (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Staton v. Boeing,
    327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 18

Tate v. Weyerhaeuser Co.,
    723 F.2d 598 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Valentino v. Carter-Wallace, Inc.,
    97 F.3d 1227, 1234 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Weinberger v. Kendrick,
    698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wietzke v. Costar Realty Info., Inc.,
  2011 U.S. Dist. LEXIS 20605 (S.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Wren v. RGIS Inventory Specialists,
  2011 U.S. Dist. LEXIS 38667 (N.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Statutes:**

Cal. Business and Professions Code §17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cal. Labor Code §226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cal. Labor Code §510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. Rules Civ. Proc., rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Secondary Authorities:**

2 H. Newberg & A. Conte, Newberg on Class Actions (3d ed. 1992) . . . . . . . . . 8, 9, 20, 23

Manual for Complex Litigation, Second §30.44 (1993) . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

3B J. Moore, Moore's Federal Practice §§23.80 - 23.85 (2003) . . . . . . . . . . . . . . . . . . . . 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Ariel Fulcher ("Plaintiff") and Defendant Olan Mills, Inc. ("Olan Mills" or "Defendant") respectfully submit this memorandum of points and authorities in support of their joint motion for preliminary approval of settlement of this class action.

## I.    INTRODUCTION

Plaintiff and Defendant have reached a full and final settlement of the above-captioned action, which is embodied in the Class Action Settlement Agreement ("Agreement") filed concurrently with the Court.  By this motion, the parties seek preliminary approval from the Court of the Agreement  (a copy of which is attached as <u>Exhibit 1</u> to the Declaration of Kyle Nordrehaug, served and filed herewith), conditional certification of the Class, and entry of the Preliminary Approval Order.[1]

## II.    DESCRIPTION OF THE PROPOSED SETTLEMENT

Counsel for the Parties, after litigation and settlement negotiations, agreed to a settlement that is fair, reasonable and favorable to the Class, which is defined as follows:

all persons who worked in a California studio as a photographer during any portion of the period of November 29, 2011 through September 30, 2011.

Agreement at §II(7).

The Parties reached this settlement based upon the same terms in the class settlement approved by the United States District Court for the Middle District of Tennessee in *Applegate-Walton v. Olan Mills*, Case No. 3:10-cv-00224 ("Applegate-Walton settlement").  The Applegate-Walton settlement released the class claims alleged in the Litigation for the period from February 22, 2007 through November 28, 2009.  Defendant provided Plaintiff with documentation concerning the Applegate-Walton settlement.  The settlement amount in this case was calculated using the per workweek amount for California employees in the Applegate-Walton settlement which was finally approved by the District Court as fair and reasonable.

---

[1]    Capitalized terms in this Motion have the same meaning as contained in the Agreement.

Declaration of Kyle Nordrehaug, ("Decl. Nordrehaug"), ¶ 5.

Under the terms to which the Parties have agreed, Olan Mills will make a payment of One Hundred Twenty-Nine Thousand Nine Hundred Fifty-Six Dollars and Eighty Cents ($129,956.80) ("Gross Fund Value") in full discharge of all the claims asserted in the Second Amended Complaint. The settlement will be made on a claims-made basis, without a reversion to Defendant. Decl. Nordrehaug, ¶ 3. Payments by Defendant pursuant to this Agreement shall settle all pending issues between the Parties, including, but not limited to, all payments of class claims, the Class Representative Service Award, Plaintiff's Attorney Fees, Plaintiff's Litigation Expenses, the portion of the PAGA payment payable to the State of California, the employers' payroll taxes and Settlement Expenses. (Agreement at §§ I(7) and II(14).)

This is a fair result for the members of the Class. The settlement in this case is based upon the settlement amount already held to be fair by the District Court in the Appelgate-Walton settlement. Liability in this case was uncertain because a jury may have found that some or all of the Class Members were properly compensated for their work. Moreover, there was further uncertainty as to whether class certification could have been achieved and maintained throughout the litigation. Decl. Nordrehaug, ¶ 6.

## III.   NATURE OF THE CASE

On February 22, 2011, Plaintiff filed a Complaint ("Complaint") in the Alameda County Superior Court, case number RG11562275 on behalf of himself and a proposed class consisting of allegedly similarly situated individuals who were employed by Olan Mills during any portion of the period from February 22, 2007 through the present. The complaint alleges claims for: (1) failure to pay overtime wages in violation of Cal. Lab. Code §§ 510, et seq.; (2) failure to provide accurate itemized statements in violation of Cal. Lab. Code § 226; and (3) unfair competition in violation of Cal. Bus & Prof. Code § 17200, et seq. (the "Litigation"). Decl. Nordrehaug, ¶ 7.

On April 14, 2011, Defendant removed the Litigation to the United States District Court

1   for the Northern District of California, San Francisco Division, where the Litigation was
2   assigned to Judge Elizabeth D. Laporte as case number 3:11-cv-01821-EDL.  On April 20,
3   2011, Defendant filed an Answer to the Complaint.  Decl. Nordrehaug, ¶ 8.

4         On June 6, 2011, Plaintiff filed a First Amended Complaint, which maintained the
5   existing allegations and claims, and added a new claim for violation of the Private Attorneys
6   General Act ("PAGA") based upon the alleged violations of the Labor Code pled in the
7   Complaint.  On July 1, 2011, Defendant filed an Answer to the First Amended Complaint.
8   Decl. Nordrehaug, ¶ 9.

9         In May 2011, Defendant informed Plaintiff of a prior class settlement in a case entitled
10  Applegate-Walton v. Olan Mills in the United States District Court for the Middle District of
11  Tennessee ("Applegate-Walton").  Final Approval of the settlement in Applegate-Walton was
12  entered by the District Court in August 2010.  The Applegate-Walton settlement released the
13  class claims alleged in the Litigation for the period from February 22, 2007 through November
14  28, 2009.  Defendant provided Plaintiff with documentation concerning the Applegate-Walton
15  settlement.  Decl. Nordrehaug, ¶ 10.

16        As a result of the Applegate-Walton settlement, in June 2011 Plaintiff and Defendant
17  engaged in settlement discussions to resolve the Litigation for the period after November 28,
18  2009 on the same terms as approved by the District Court in Applegate-Walton.  The Parties
19  have reached an agreement as to the basic terms of a class settlement in this Litigation.  Decl.
20  Nordrehaug, ¶ 11.

21        Accordingly, for purposes of this Agreement, a "Class Member" is defined as any
22  individual who belongs to the following class:

23        all persons who worked in a California studio as a photographer during any
          portion of the period of November 29, 2011 through September 30, 2011.
24
25  Agreement at § II(7).

26        Although a settlement has been reached, Olan Mills denies any and all liability or
27  wrongdoing of any kind associated with the claims alleged in the Litigation.  Further, Olan

28

Mills denies that the claims asserted are suitable for class treatment.  Olan Mills maintains, among other things, that they have complied at all times with the California Labor Code, that the members of the putative class were properly compensated under California law and that all members of the putative class were properly paid all wages owed to them.  Further, Olan Mills contends that class certification would be inappropriate because the Plaintiff does not share common issues of fact or law with the proposed class, Plaintiff are not an adequate representative of the proposed class, the claims are not typical of the proposed class, and class treatment would require the Court to conduct individualized inquiries that would predominate over common questions of law or fact.  Decl. Nordrehaug, ¶ 12.

Plaintiff contends that Olan Mills failed to fully compensate the Class members for all hours worked, including overtime, failed to provide accurate wage statements, failed to provide expense reimbursement, and thereby violated California wage and hour laws.  Plaintiff also contends that the Lawsuit is appropriate for class certification on the basis that the Plaintiff's claims meet the requisites thereof.  Without admitting that class certification is proper, Olan Mills has stipulated that a Class of individuals employed by Olan Mills as a studio photographer in California during the Settlement Period may be certified for settlement purposes only.  The Parties agree that certification for settlement purposes is not an admission that class certification would be proper if the class certification issue were litigated.  Further, this agreement is not admissible in this or any other proceeding as evidence that the Class could be certified absent a settlement.  Solely for purposes of settling the lawsuits, the Parties stipulate and agree that the requisites for establishing class certification with respect to the Class, as defined above, have been met and are met.  Decl. Nordrehaug ¶ 13.

Class Counsel has conducted an investigation into the facts of the class action.  Class Counsel has diligently evaluated the Class Members' claims against Olan Mills.  Prior to the Parties reaching a settlement, counsel for Olan Mills provided Class Counsel with access to information and documentation concerning the Applegate-Walton settlement and the Class in

1  this case, including data reflecting the weeks worked by the Class Members.  Based on the

2  foregoing data and their own independent investigation and evaluation, Class Counsel believes

3  that the settlement with Olan Mills for the consideration and on the terms set forth in this

4  Agreement is fair, reasonable, and adequate and is in the best interest of the Class in light of all

5  known facts and circumstances, including the risk of significant delay, defenses asserted by

6  Olan Mills, and numerous potential appellate issues.  Decl. Nordrehaug at ¶ 14.  Defendant and

7  Defendant's counsel also agree that the Settlement is fair and in the best interest of the Class.

8  **IV.    PLAN OF ALLOCATION**

9          In consideration for settlement of this Lawsuit and a release of the claims described in

10  Sections (III)5 of the Agreement, Olan Mills agrees to pay a Gross Fund Value of One Hundred

11  Twenty-Nine Thousand Nine Hundred Fifty-Six Dollars and Eighty Cents ($129,956.80), which

12  is the maximum amount Olan Mills shall be required to pay under the Agreement.  The Gross

13  Fund Value shall consist of the following elements:  (i) cash payments as described in this

14  Agreement to Authorized Claimants made on a claims-made basis; (ii)  Class Representative

15  Service Award as ordered by the court and as described in this Agreement; (iii) Plaintiff's

16  Litigation Expenses as ordered by the court and as described in this Agreement; (iv) Plaintiff's

17  Attorney Fees payable upon order of the court and as described in this Agreement; (v)

18  Settlement Expenses, as defined below; (vi) PAGA payment payable upon order of the court

19  and as described in this Agreement; and, (vii) the employers' payroll taxes on the portion of the

20  Settlement Payments designated as wages as described in this Agreement.  Decl. Nordrehaug

21  at ¶ 15.

22          As per Section III(9) of the Agreement, the Claims Administrator shall make only the

23  following payments from the Gross Fund Value: (1) payment of the Plaintiff's Litigation

24  Expenses as awarded by the Court not to exceed $2,000; (2) payment of Plaintiff's Attorney

25  Fees as awarded by the Court and not to exceed $28,347.33; (3) payment of the Class

26  Representative Service Award as awarded by the Court and not to exceed $3,000; (4) Settlement

27

28

Expenses incurred in this action, not to exceed $8,000, (5) the PAGA payment to the Labor Workforce Development Agency ("LWDA") as approved by the Court in the amount of $1,000; and, (6) the amount necessary to cover employers' payroll taxes on the portion of the Settlement Payments designated as wages which amount is estimated to be less than $5,000.   After these payments are deducted from the Gross Fund Value, the balance is the Net Fund Value, which shall be distributed to the Claimants as set forth in the Agreement.   Decl. Nordrehaug at ¶ 15.

As set forth in Section III(10) of the Agreement, the parties have agreed that the distribution to each Class Member submitting a valid and timely Claim shall be determined as follows:  (1) The time and payroll records of each Authorized Claimant shall be examined to determine the number of weeks the Authorized Claimant worked during the Settlement Period while a Settlement Class Member; and, (2) The number of weeks each Authorized Claimant worked while a Settlement Class Member shall be divided by the total weeks worked by all Authorized Claimants to determine a percentage for each Authorized Claimant.  The resulting percentage shall be multiplied by the Net Fund Value Claim to determine the Settlement Payment to be paid to each Authorized Claimant.  Decl. Nordrehaug, ¶ 16.

As set forth in Section III(11) of the Agreement, after the Effective Date, the Net Fund Value shall be distributed by the Claims Administrator in accordance with the following eligibility requirements: (a)  Those persons who submit valid and timely Request for Exclusion Forms pursuant to the Original Notice ("Opt-Outs") are not entitled to any Settlement Payments; and, (b) Olan Mills, through the Claims Administrator, shall make payments to Authorized Claimants on a claims-made basis as set forth in Section III(9) of the Agreement.  Decl. Nordrehaug, ¶ 16.

As part of the Settlement, Class Counsel shall submit an application to the court for approval of Plaintiff's Attorney Fees and Plaintiff's Expenses to be paid out of the Gross Fund Value.  (Agreement at § III(14).)  Class Counsel will requesting that the court approve $28,347.33 as Plaintiff's Attorney Fees.  Class Counsel will also seek an award of actual costs

and expenses incurred, not to exceed $2,000.00. Plaintiff's Litigation Expenses shall cover actual expenses in this matter that appear as costs on Class Counsel's billing statements and that are reasonably related to the handling of the Litigation, including, but not limited to, reasonable expenses for experts including the accounting/financial advisors assisting them with financial analysis, filing fees, expenses of travel, delivery charges, messenger fees, copying costs, online research charges, deposition costs and parking fees. Olan Mills and their counsel will not oppose the application by Class Counsel brought in accordance with the Agreement. Decl. Nordrehaug, ¶ 17.

As per Section III(14) of the Agreement, Class Counsel will request that Class Representative Ariel Fulcher receive an enhancement award to be deducted from the Gross Fund Value of $3,000 for service as the sole Class Representative. This wards will be paid in addition to Plaintiff's individual claim for a share of the settlement to which they are otherwise entitled through the claims process as a Class Member. Olan Mills will not oppose this request. Decl. Nordrehaug, ¶ 18.

As per Section III(12) of the Agreement, the reasonable costs of the Claims Administrator associated with the administration of this Settlement not to exceed $8,000, upon order of the court, will be paid from the Gross Fund Value. The Claims Administrator will be Gilardi & Company LLC. Decl. Nordrehaug, ¶ 19.

As per Section III(9) of the Agreement, the Parties have allocated a total of One Thousand Dollars ($1,000) of the Gross Fund Value to the California Labor and Workforce Development Agency for penalties under the Private Attorneys General Act ("PAGA payment"). Decl. Nordrehaug, ¶ 20.

Olan Mills will pay the Claims Administrator the Gross Fund Value upon Final Approval by the Court. The distribution of the Gross Fund Value shall be made by the Claims Administrator as follows: If no objection to the settlement is made, the payment of all Authorized Claims, payment of Settlement Expenses, Class Counsel's Fees, Plaintiff's Litigation

Expenses, the Employers' share of payroll taxes, and the Class Representative Service Award shall be made by the Claims Administrator within fifteen (15) days of the final approval order; If an objection to the settlement is made but no appeal is filed, then payment of all Authorized Claims, payment of Settlement Expenses, Class Counsel' Fees, Plaintiff's Litigation Expenses, the Employers' share of payroll taxes, and the Class Representative Service Award shall be made by the Claims Administrator within forty (40) days of the final approval order; If an appeal is filed, payment of all Authorized Claims, payment of Settlement Expenses, Class Counsel' Fees, Plaintiff's Litigation Expenses, and the Class Representative Service Award shall occur within sixty (60) days of the date the judgment is Final.  Decl. Nordrehaug, ¶ 21.

## V.     THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR PRELIMINARY APPROVAL

When a proposed class-wide settlement is reached, the settlement  must be submitted to the court for approval. Fed. R. Civ. P. 23(e)(1)(A); 2 H. Newberg & A. Conte, Newberg on Class Actions (3d ed. 1992) at §11.41, p.11-87.  Preliminary approval is the first of three steps that comprise the approval procedure for settlements of class actions.  The second step is the dissemination of notice of the settlement to all class members.  The third step is a final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented and class members may be heard regarding the settlement.  See Manual for Complex Litigation, Second §30.44 (1993).

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement is "within the range of possible approval." Manual for Complex Litigation, Second §30.44 at 229; Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982).  Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective Class for their acceptance or rejection."  Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 323 F. Supp. 364, 372 (E.D. Pa. 1970).  There is an initial presumption of

fairness when a proposed settlement, which was negotiated at arm's length by counsel for the Class, is presented for court approval.   Newberg, 3d Ed., §11.41, p.11-88.   However, the ultimate question of whether the proposed settlement is fair, reasonable and adequate is made after notice of the settlement is given to the class members and a final settlement hearing is conducted by the Court.

**A.      The Role Of The Court In Preliminary Approval Of A Class Action Settlement**

The approval of a proposed settlement of a class action suit is a matter within the broad discretion of the trial court.   Staton v. Boeing, 327 F.3d 938, 959 (9th Cir. 2003).   Preliminary approval does not require the trial court to answer the ultimate question of whether a proposed settlement is "fair, reasonable and adequate."   In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th Cir. 1991); Manual for Complex Litigation, Third, §§ 20.212.   That determination is made only after notice of the settlement has been given to the members of the class and after the class members have been given an opportunity to voice their views of the settlement or to be excluded from the settlement class.   See, e.g., 3B J. Moore, Moore's Federal Practice §§23.80 - 23.85 (2003).

In considering a potential settlement for preliminary approval purposes, the trial court does not have to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute (Detroit v. Grinnell Corp., 495 F.2d 448, 456 (2d Cir. 1974)), and need not engage in a trial on the merits.   Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983). The court is not required to determine that certification of a settlement class is appropriate until the final settlement approval.   In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 797 (3d Cir. 1995).

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation."   Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied 464 U.S. 818 (1983) (quoting

1   <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S.

2   414, 424-25 (1968)).  Therefore, many courts recognize that the opinion of experienced counsel

3   supporting the settlement is entitled to considerable weight.  <u>Kirkorian v. Borelli</u>, 695 F. Supp.

4   446, 451 (N.D. Cal. 1988); <u>Reed v. General Motors Corp.</u>, 703 F.2d 170, 175 (5th Cir. 1983);

5   <u>Weinberger</u>, <u>supra</u>, 698 F.2d at 74; <u>Armstrong v. Board of School Directors</u>, 616 F.2d 305, 325

6   (7th Cir. 1980); <u>Fisher Bros. v. Cambridge-Lee Indus., Inc.</u>, 630 F. Supp. 482, 489 (E.D. Pa.

7   1985).  For example, in <u>Lyons v. Marrud, Inc.</u>, [1972-1973 Transfer Binder] Fed. Sec. L. Rep.

8   (CCH) Paragraph 93,525 (S.D.N.Y. 1972), the court noted that "[e]xperienced and competent

9   counsel have assessed these problems and the probability of success on the merits.  They have

10   concluded that compromise is well-advised and necessary.  The parties' decision regarding the

11   respective merits of their position has an important bearing on this case."  Id. at ¶ 92,520.

12   **B.    Factors To Be Considered In Granting Preliminarily Approval**

13          A number of factors are to be considered in evaluating a settlement for purposes of

14   preliminary approval.  No one factor should be determinative, but rather all factors should be

15   considered.  These criteria have been summarized as follows:

16          If the proposed settlement appears to be the product of serious, informed, non-collusive

17   negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to

18   class representatives or segments of the class, and falls within the range of possible approval,

19   then the court should direct that notice be given to the class members of a formal fairness

20   hearing, at which evidence may be presented in support of and in opposition to the settlement.

21   <u>Manual of Complex Litigation</u>, Second §30.44, at 229.  Here, the settlement meets all of these

22   criteria.

23          **1.    The Settlement is the Product of Serious, Informed and Noncollusive**
                **Negotiations**

24

25          This settlement is the result of extensive and arm's length negotiations over several

26   months.  Olan Mills denies each and every one of the claims and contentions alleged in this

27   Lawsuit.  Olan Mills has asserted and continues to assert many defenses thereto, and has

28

expressly denied and continues to deny any wrongdoing or legal liability arising out of the conduct alleged in the Lawsuit.  Nonetheless, Olan Mills has concluded that this Lawsuit be settled in the manner and upon the terms and conditions set forth in the Agreement in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.  Olan Mills has decided to put to rest the Released Claims of the Class Members.

The Parties reached this settlement based upon the same terms in the class settlement approved by the United States District Court for the Middle District of Tennessee in the Applegate-Walton settlement.  The Applegate-Walton settlement released the same class claims alleged in this Litigation for the period from February 22, 2007 through November 28, 2009. Defendant provided Plaintiff with documentation concerning the Applegate-Walton settlement. The settlement amount in this case was calculated using the per workweek amount for California employees in the Applegate-Walton settlement ($13.50 per workweek) which amount was finally approved by the District Court as fair and reasonable.  Decl. Nordrehaug ¶ 5.  The final settlement terms were then negotiated and set forth in the Agreement for this Court's approval.  Importantly, Plaintiff and Class Counsel believe that this settlement is fair, reasonable and adequate.  By reason of the settlement, Olan Mills has agreed to pay $129,956.80, as payment in full of all of the Class claims arising from the events described in the Litigation including Class Counsel's attorneys' fees  and expenses, PAGA payments, the service award, the cost of class notice and claims administration, and the employers share of payroll taxes.

Class Counsel has conducted an investigation into the facts of the class action, including a review of relevant documents and data.  Decl. Nordrehaug, ¶ 14.  Based on the foregoing information and their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Olan Mills for the consideration and on the terms set forth in this Agreement is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Olan Mills, and numerous potential appellate issues.  Defendant and Defendant's counsel

also agree that the Settlement is fair and in the best interest of the Class Members.

Plaintiff and Class Counsel recognize the expense and length of continuing to litigate and trying this Lawsuit against Olan Mills through possible appeals which could take several years. Class Counsel has also taken into account the uncertain outcome and risk of litigation, especially in complex actions such as this Lawsuit. Class Counsel is also mindful of and recognize the inherent problems of proof under, and alleged defenses to, the claims asserted in the Lawsuit. Based upon their evaluation, Plaintiff and Class Counsel has determined that the settlement set forth in the Agreement is in the best interest of the Class Members. Decl. Nordrehaug, ¶ 22.

Here the negotiations have been arm's length between experienced counsel and aggressive with capable advocacy on both sides. Decl. Nordrehaug, ¶23. Accordingly, "[t]here is likewise every reason to conclude that settlement negotiations were vigorously conducted at arms' length and without any suggestion of undue influence." In re Wash. Public Power Supply System Sec. Litig., 720 F. Supp. 1379, 1392 (D. Az. 1989).

### 2. The Settlement Has No "Obvious Deficiencies" and Falls Within the Range for Approval

The proposed Settlement herein has no "obvious deficiencies" and is well within the range of possible approval. All Class Members will receive an opportunity to participate in and receive payment.

The calculations to compensate for the settlement amount due the Class was based upon the amount approved in the Applegate-Walton settlement. This settlement essentially covers the period of time immediately following the Applegate-Walton settlement and the calculation of the payments to the Class was made using the $13.50 per workweek amount approved by the District Court in the Applegate-Walton settlement. Decl. Nordrehaug, ¶ 6. For the employees whose claims are at issue in this Lawsuit, there were 6,119.22 workweeks which was then multiplied by the $13.50 per workweek amount from the Applegate-Walton settlement. The total to the Class was therefore $82,609.47. Plaintiff then added to this amount the payments

for attorneys' fees, litigation expenses, the costs of claims administration, the service award and the estimated payroll taxes to reach the total settlement of $129,956.80.  Decl. Nordrehaug, ¶ 6.

Consequently, the settlement amount, after deductions, will result in the same settlement payment to the members of the Class approved as fair and reasonable in the Applegate-Walton settlement.  The prior ruling that this amount is fair and reasonable should be no different in this case.  Clearly the goal of this litigation has been met.  Decl. Nordrehaug, ¶ 6.  As a result, this settlement is most certainly entitled to preliminary approval.

Where both sides face significant uncertainty, the attendant risks favor settlement. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Here, a number of defenses asserted by Olan Mills presented serious threats to the claims of Plaintiff and the other Class Members. For example, Olan Mills contended that all and/or many Class Members were fully compensated for the hours worked.  Olan Mills could further contend that they were unaware of any additional work time that was uncompensated.  Finally, Olan Mills argued that the employees did not incur any necessary expenses in performing their job duties.  As a result, Olan Mills could argue that they complied with the Labor Code, and any non-compliance was unintentional and the result of the employees.  Decl. Nordrehaug, ¶ 24.

There was also a significant risk that, if the Lawsuit was not settled, Plaintiff would be unable to obtain class certification and thereby not recover on behalf of any Olan Mills employees other than themselves.  In Smith v. Ceva Logistics U.S., Inc., 2011 U.S. Dist. LEXIS 82020 (C.D. Cal. 2011), the District Court recently denied class certification of an "off-the-clock" wage claim.  Similarly, here Olan Mills would have certainly argued in opposing class certification that individual issues predominated because the actual time worked would have to be separately determined for each Class Member based on their individual experience.  While other cases have approved class certification in wage and hour claims, class certification in this Lawsuit would have been hotly disputed and was by no means a foregone conclusion.  Decl. Nordrehaug, ¶ 25.

After arm's length negotiations, the parties recognized the potential risks and agreed on a settlement based upon the extension of the Applegate-Walton settlement which correlates to $129,956.80.  As the federal court recently held in Glass v. UBS Fin. Servs., 2007 U.S. Dist Lexis 8476, *12 (N.D. Cal. 2007) where the parties faced uncertainties similar to those here:

> In light of the above-referenced uncertainty in the law, the risk, expense, complexity, and likely duration of further litigation likewise favors the settlement. Regardless of how this Court might have ruled on the merits of the legal issues, the losing party likely would have appealed, and the parties would have faced the expense and uncertainty of litigating an appeal. "The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." See In re Mego Financial Corp. Securities Litigation, 213 F.3d 454, 458 (9th Cir. 2000).

Here, the risk of further litigation is substantial.

### 3. The Settlement Does Not Improperly Grant Preferential Treatment To The Class Representative or Segments Of The Class

The relief provided in the settlement will benefit all Class Members equally.  The settlement does not improperly grant preferential treatment to the Class Representative or any individual segments of the Class.

Each Class Member, including the Plaintiff, will be entitled to payment  based on the plan of allocation.  Each Class Member's lump sum payment will be determined as follows:

First, the time and payroll records of each Authorized Claimant shall be examined to determine the number of weeks the Authorized Claimant worked during the Settlement Period while a Settlement Class Member.  Next, the number of weeks each Authorized Claimant worked while a Settlement Class Member shall be divided by the total weeks worked by all Authorized Claimants to determine a percentage for each Authorized Claimant.  The resulting percentage shall be multiplied by the Net Fund Value Claim to determine the Settlement Payment to be paid to each Authorized Claimant.   (Agreement at §III(10).)

In addition, the Plaintiff  will apply to the Court for a service award of $3,000.  In Glass v. UBS Fin. Servs., 15 Wage , &, Hour Cas. 2d (BNA) 1330, 2007 U.S. LEXIS 8476 at *51-*52 (N.D.Cal. 2007), the District Court awarded the four (4) class representatives $25,000

each for their assistance in the litigation where there was no formal discovery.  The amount requested in this case is less than the amount Court's have held to be presumptively reasonable in similar situations.  See <u>Jacobs v. Cal. State Auto. Ass'n Inter-Ins.</u>, 2009 U.S. Dist. LEXIS 101586 (N.D. Cal. 2009) (awarding $7,500 to plaintiff); <u>Hopson v. Hanesbrands Inc.</u>, 2009 U.S. Dist. LEXIS 33900 (awarding $5,000 and noting that $5,000 was presumptively reasonable); <u>Wren v. RGIS Inventory Specialists</u>, 2011 U.S. Dist. LEXIS 38667 (N.D. Cal. 2011) ($5,000 service award where average recovery was $207); <u>Wietzke v. Costar Realty Info., Inc.</u>, 2011 U.S. Dist. LEXIS 20605 (S.D. Cal. 2011) (awarding $5,000 where there was no discovery).

**4.    The Stage Of The Proceedings Is Sufficiently Advanced To Permit Preliminary Approval Of The Settlement**

The stage of the proceedings at which this settlement was reached also militates in favor of preliminary approval and ultimately, final approval of the settlement.  Class Counsel has conducted a thorough investigation into the facts of the class action.  Class Counsel began investigating the Class Members' claims before this Lawsuit was filed.  Class Counsel also obtained production of information from counsel for Defendant to permit analysis of this Litigation on the same basis as in the Applegate-Walton settlement.  Accordingly, the agreement to settle did not occur until Class Counsel possessed sufficient information to make an informed judgment regarding the reasonableness of the settlement and the risks of litigation and the likelihood of success on the merits.  Decl. Nordrehaug  ¶ 27.

Based on the prior settlement, the workweek data for the Class in this case, and their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Olan Mills for the consideration and on the terms set forth in this Agreement is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Olan Mills, and numerous potential appellate issues.  Olan Mills and Olan Mills' counsel also agree that the Settlement is fair and in the best interest of the Class Members.  Counsel for both parties possessed sufficient information to make an informed judgment regarding the reasonableness

of the settlement and the results that could be obtained through further litigation.   Decl. Nordrehaug, ¶ 28.

In <u>Glass</u>, the Northern District of California recently granted final approval of an overtime and meal wage action although in <u>Glass</u> no formal discovery had been conducted prior to the settlement:

> Here, no formal discovery took place prior to settlement. As the Ninth Circuit has observed, however, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." See <u>In re Mego Financial Corp. Securities Litigation</u>, 213 F.3d at 459.

2007 U.S. Dist. LEXIS 8476 at *14.

Here, Class Counsel was in similarly informed position to evaluate the fairness of this settlement than in <u>Glass</u> because they conducted informal discovery as well as independent investigations and due diligence to confirm the accuracy of the information supplied by Olan Mills.

## VI.   THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES

The proposed settlements meet all of the requirements for class certification under F.R.C.P. §23(b)(2) as demonstrated below, and therefore, the Court may appropriately approve the Class as defined in the Agreement.   This Court should conditionally certify a class for settlement purposes only that consists of "all persons who worked in a California studio as a photographer during any portion of the period of November 29, 2009 through September 30, 2011 ."   Agreement at § II(7).

### A.   Rule 23 of the Federal Rules of Civil Procedure Governs

Plaintiff seeks certification of this Lawsuit for settlement purposes under F.R.C.P §23(b)(3).   This portion of rule 23 applies to class actions where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."   Fed.R.Civ.P. 23(b)(3).

To maintain a class action under rule 23(b)(3), the four prerequisites of F.R.C.P. Rule

23(a) must first be satisfied.  These prerequisites are referred to as numerosity, commonality, typicality, and adequacy of representation, and are set forth in Rule 23(a) as follows:

(1)     the class is so numerous that joinder of all members is impracticable,

(2)     there are questions of law or fact common to the class,

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4)     the representative parties will fairly and adequately protect the interests of the class.

While Olan Mills disputes that the Plaintiff can satisfy any of these requirements, the Parties agree that, for purposes of settlement, these requirements may be satisfied in this case, and therefore, the proposed Class should be certified for purposes of settlement only.

## B.     The Numerosity Requirement Is Satisfied

Rule 23(a) merely requires that the class be "so numerous that joinder of all members is impracticable."  F.R.C.P. §23(a).  "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members."  EEOC v. Kovacevich "5" Farms, 2007 U.S. Dist. LEXIS 32330 at *57 (E.D.Cal. April 18, 2007); see also Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998); Lockwood Motors, Inc. v. General Motors Corp., 162 F.R.D. 569, 574 (D. Minn. 1995).  In Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), the Court held that "numerosity is presumed at a level of 40 members."  The Ninth Circuit observed that classes with fewer than 70 members have been certified in numerous cases. Jordan v. County of Los Angeles, 669 F.2d 1311, 1320 n.10 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810, 103 S. Ct. 35, 74 L. Ed. 2d 48 (1982) (noting that classes with fewer than 70 members have been certified in numerous cases).

Here, the Class is composed of approximately comprised of approximately 227 Class Members, which is sufficiently numerous.  Decl. Nordrehaug, ¶30.

## C.     Common Questions of Law and Fact Bind the Class

Rule 23(a) requires that there be a common question of law or fact.  There is no requirement that the members of the class be identically situated, only that there exists one or

more factual or legal questions common to all members. <u>Jenson v. Continental Fin. Corp.</u>, 404 F. Supp. 806 (D. Minn. 1975). This threshold of "commonality" is not particularly high. <u>Jenkins v. Raymark Ind.</u>, Inc., 782 F.2d 468, 472 (5th Cir. 1986). The fundamental question is whether the resolution of the common legal or factual questions would affect all or a substantial number of the class members. <u>Jenkins</u>, <u>supra</u>, 782 F.2d at 472. Indeed, if a claim "arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." <u>Donaldson v. Pillsbury Co.</u>, 554 F.2d 825, 831 (8th Cir. 1977), cert. denied, 434 U.S. 856 (1977).

Rule 23(a) is satisfied where "the course or conduct giving rise to the cause of action affects all class members, and at least one of the elements of that cause of action is shared by all of the class members." <u>Lockwood Motors</u>, 162 F.R.D. at 575. This requirement is met if common questions of liability are present, even if there may be individual variations. <u>In re Workers' Compensation</u>, 130 F.R.D. 99, 104 (D. Minn. 1990).

Here, common questions of law and fact, as alleged by the Plaintiff, are present, specifically the questions of whether the employees were properly compensated for overtime work and for expenses incurred are common to the class. Decl. Nordrehaug, ¶30. Olan Mills disputes that commonality actually exists, but will not oppose such a finding for purposes of this settlement only.

### D.    The Claim of the Representative Plaintiff Is Typical of the Class Claims

The typicality requirement of Rule 23(a) requires that the members of the class have the same or similar claims as the named plaintiff. "The typicality requirement is met when the claims of the named plaintiff arise from the same event or are based on the same legal theories." <u>Tate v. Weyerhaeuser Co.</u>, 723 F.2d 598, 608 (8th Cir. 1983). In <u>Hanlon v. Chrysler Co.</u>, 150 F.3d 1011 (9th Cir. 1998), the Ninth Circuit held that "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." 50 F.3d at 1020. Typicality "does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members." <u>Stanton</u>, <u>supra</u>, at 957.

In the instant case, there can be little doubt that the typicality requirement is fully satisfied.  The Plaintiff, like every other member of the Class, performed in the same job classification as a studio photographer, was subject to the same employment practices by Olan Mills and claims unpaid overtime wages, expense reimbursement and related penalties.  Thus, the claims of both the Plaintiff and the members of the Class arise from the same course of conduct by the Olan Mills, involve the same job position and type of work, and are based on the same legal theories. Decl. Nordrehaug, ¶ 30.  The typicality requirement of Rule 23 is therefore met as to the common issues presented in this case.  While Olan Mills disputes that the Plaintiff has claims typical of the individuals she purports to represent, Olan Mills does not oppose a finding of typicality for purposes of this settlement only.

### E.    The Class Representative Has Fairly and Adequately Protected the Interest of the Class

The Plaintiff provided adequate representation of the interests of the class in that: (a) her attorneys are competent, experienced in class litigation and generally able to conduct the proposed litigation; and (b) the Plaintiff does not have interests antagonistic to those of the class. Hanlon, 150 F.3d at 1020.  Simply put, Rule 23 asks whether the class representative will vigorously prosecute on behalf of the class and have a basic understanding of the claims.  This requirement has been met here.  First, the Plaintiff is well aware of Plaintiff's duties as the representative of the class and has actively participated in the prosecution of this case to date. Plaintiff effectively communicated with Class Counsel, provided documents and information to Class Counsel, and participated in the investigation of the Lawsuit.  The involvement of the Plaintiff was essential to the prosecution of the Lawsuit and the settlement.  Decl. Nordrehaug, ¶ 30.  Second, the Plaintiff retained competent counsel who have extensive experience in class actions.  See Decl. Nordrehaug at ¶ 31.  Class Counsel has extensive experience in class action litigation in California and throughout the country.  Class Counsel has been involved as class counsel in over two hundred (200) class action matters, including many wage and hour class actions.  See, e.g., Resume, attached as Exhibit 2 to the Decl. Nordrehaug.  Third, there is no antagonism between the interests of the Plaintiff and those of the Class.  Both the Plaintiff and

the Class Members seek monetary relief under the same set of facts and legal theories.  Under such circumstances, there can be no conflicts of interest, and adequacy of representation is presumed.  In re Wirebound Boxes Antitrust Lit., 128 F.R.D. 268 (D. Minn. 1989).  While Olan Mills disputes that the Plaintiff is an adequate class representative, Olan Mills does not oppose such a finding for purposes of this settlement only.

**F.      For the Class As Alleged in the Second Amended Complaint, The Additional Requirements of Rule 23 Are Satisfied**

Since the requirements of Rule 23(a) have been satisfied, the Court now must look to Rule 23(b)(3) in order to determine whether a class should be maintained under one of the listed categories.  Under Rule 23(b)(3), a class action may be maintained if two basic conditions are met.  First, common questions must predominate over individual issues, and second, the class action must be superior to other available other methods for the fair and efficient adjudication of the controversy.

**1.      The Predominance Requirement Is Met**

Rule 23(b)(3) provides that a class may be maintained if "the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members."  There is no bright line to determine whether common issues predominate.  A claim will meet the predominance requirement in cases where generalized evidence of the Defendant's conduct will prove or disprove an element of the claim on a simultaneous class-wide basis.  The "fundamental question" is whether the claim asserted is seeking a remedy to a "common legal grievance."  Lockwood Motors, 162 F.R.D. at 580; Buchholtz v. Swift & Co., 62 F.R.D. 581, 598 (D.Minn. 1973).  Further, the mere fact that there are certain issues that may need to be determined on an individual basis does not preclude the satisfaction of the predominance requirement.  See Newberg & Comte, Newberg on Class Actions §4.25 (3d ed. 1992).

Here, the adjudication of the common issues surrounding Defendant's uniform employment practices could establish Olan Mills' liability on a class-wide basis.  Plaintiff contends that Olan Mills engaged in a uniform course of conduct with respect to the Class and

1
2
3
4
5

the only question is whether Olan Mills' conduct supports a meritorious claim.  Such suits challenging the legality of a standardized course of conduct are generally appropriate for resolution by means of a class action.  Notably, the District Court in the Applegate-Walton case concluded that the predominance requirement was met with respect to these same claims when approving the class settlement in that case.  Accordingly, Plaintiff argues that common issues of law and fact present in this case predominate.  Decl. Nordrehaug, ¶30.

6
7

While Olan Mills disputes that the predominance requirement may be satisfied, it will not oppose such a finding for purposes of this settlement only.

8

### 2. The Superiority Requirement Is Met

9
10
11
12
13

To certify a class, the Court must also determine "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  F.R.C.P. Rule 23 (b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

14
15
16
17
18
19
20
21
22

"If the plaintiffs' claims are substantiated, a question as to which the court presently has no opinion, the class action mechanism is clearly the most efficient means of resolving the many claims which may be asserted.  If the case were not handled as a class, thousands of small claims would either be brought or unjustly abandoned.  The first possibility would be a flood of cases, the second would involve individual claims abandoned because of cost." In re Workers' Compensation., 130 F.R.D. at 110.  In addition, Courts have held that employee concerns over retaliation or being blacklisted for suing an employer also demonstrate the superiority of class litigation in wage and hour suits.  See e.g. Heffelfinger v. Elec. Data Sys. Corp., 2008 U.S. Dist. LEXIS 5296, at *107 (C.D. Cal. 2008).

23
24
25
26

Here, a class action is the superior mechanism for adjudication of the claims as pled by the Plaintiff.  Decl. Nordrehaug, ¶30.  While Olan Mills disputes that the superiority requirement may be satisfied, it will not oppose such a finding for purposes of this settlement only.

27
28

## VII.   THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE

The Parties have agreed upon procedures by which the Class will be provided with written notice of the Settlement similar to that approved and utilized in hundreds of class action settlements.  The Parties have jointly drafted a Notice of Pendency of Class Action, attached as Exhibit A to the Agreement, a Claim Form, attached as Exhibit B to the Agreement, a Reminder Postcard, attached as Exhibit C, and a Request for Exclusion form, attached as Exhibit D, (collectively the "Notice Packet") which are hereby submitted to the District Court for Approval.  (Agreement at § III(13).)  The Claims Administrator will mail individual Notice Packets to the members of the Class via first-class regular U.S. mail using the most current mailing address information available from Olan Mills's payroll records, which shall be updated by the Claims Administrator to correct for any known or identifiable address changes.

The Notice and Claim Form, drafted jointly and agreed upon by the Parties through their respective counsel, includes information regarding the nature of the Litigation; a summary of the substance of the Settlement, including Olan Mills' denial of liability; the definition of the Class; the procedure and time period for objecting to the Settlement and participating in the Final Approval hearing; a statement that the District Court has preliminarily approved the Settlement; and information regarding the claims filing procedure and the opt-out procedure. See Exhibit A and B to Agreement.  The Notice and Claim Form will also include an estimate of the Class Member's workweeks and their share of the settlement.  Accompanying the Notice will be a Request for Exclusion Form, in the forms attached to the Agreement as Exhibit D.

The costs associated with the mailing will be paid out of the Gross Fund Value.  The Claims Administrator will mail a follow up notice ("reminder post-card") to those Class Members who have not responded with the return of a Claim Form or a Request for Exclusion Form fifteen days before the expiration of the claim period encouraging Class Members to respond before the deadline.  If Notice forms are returned because of incorrect addresses, the Claims Administrator shall conduct a Social Security number search for more current addresses for Settlement Class Members and re-mail the Notice forms to any new addresses obtained. (Agreement at § III(13).)

The Notice shall state that Class Members who wish to participate in the settlement shall complete and return the Claim Form pursuant to the instructions contained therein by first class mail or equivalent, postage paid within 60 days of the mailing.  The Notice shall also provide that any Class Member may choose to opt out of the Class, and that any such person who chooses to opt out of the Class will not be entitled to any recovery obtained by way of the settlement and will not be bound by the settlement or have any right to object, appeal or comment thereon.  The notice will provide that to opt out of the Class, a class member must file the Request for Exclusion Form attached to the Notice within 60 days of the mailing date of the Notice of Preliminary Approval of the Settlement. The Notice will also provide that all objections to the Settlement by anyone, including members of the Class, must be filed in the District Court and served upon all counsel of record by no later than 60 days from the mailing of the Notice.  The application for attorneys' fees and costs will be filed before  the notice is distributed to the Settlement Class, and the notice will direct Settlement Class Members to where they may view the application for attorneys' fees and costs.  Thus, all Settlement Class Members will have ample opportunity to review and comment on the attorneys' fees and costs before the objection deadline.  The attorneys' fees and costs will be heard in conjunction with the motion for final approval on the Final Approval Hearing date as set by this Court in the Preliminary Approval Order.  Decl. Nordrehaug, ¶32.

This notice program was designed to meaningfully reach the largest possible number of potential Class Members.  The mailing and distribution of the Notice satisfies the requirements of due process and is the best notice practicable under the circumstances and constitutes due and sufficient notice to all persons entitled thereto.

This notice satisfies the content requirements for notice following the exemplar class notice in the Manual for Complex Litigation, Second §41.43.  This notice also fulfills the requirement that Class notices be neutral. Newberg, §8.39.

## VIII.  CONCLUSION

In the judgment of Plaintiff and Class Counsel, the proposed settlement is a fair and

reasonable compromise of the issues in dispute in light of the strengths and weaknesses of each party's case.  This conclusion is confirmed by the finding of the District Court in the Applegate-Walton settlement which found the same settlement to be fair and reasonable.  After weighing the substantial, certain and immediate benefits of these settlements against the uncertainty of trial, and appeal, Plaintiff believes the proposed settlement is fair, reasonable and adequate, and warrants this Court's preliminary approval.

Accordingly, the Parties respectfully request that the Court preliminarily approve the proposed settlements, certify the Class for settlement purposes, schedule a date for a hearing on Final Approval, and sign the proposed Preliminary Approval Order submitted herewith.

Dated: November 14, 2011

**BLUMENTHAL, NORDREHAUG & BHOWMIK**

By: */s/ Kyle R. Nordrehaug*
Kyle R. Nordrehaug
Attorneys for Plaintiff

Dated: November 14, 2011

**LITTLER MENDELSON**

By: */s/ Jennifer B. Robinson*
Jennifer B. Robinson
Attorneys for Defendant